Jesse **HERNANDEZ** a/k/a
**Bumpy, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–00–109–CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 4, 2001.

Vincent Gonzalez, Corpus Christi, for appellant.

Carlos Valdez, Nueces County Dist. Atty., Douglas K. Norman, Corpus Christi, for state.

Before Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of two counts of retaliation: threatening to kill a witness and her mother in anticipation of the witness's testimony. The appellant only challenges the sufficiency of the evidence to support the conviction. The threat was allegedly communicated to the complaining witness by hand signals from the appellant. We conclude the method of communicating the threat, and the circumstances of its delivery, were sufficiently explained and demonstrated for the jury to conclude the appellant was guilty as charged, and accordingly affirm.

Alice Alaniz is a former lover of appellant and the mother of his child. She had been subpoenaed to testify in a case charging appellant's involvement in the death of Luis Luna. Later she and appellant were both incarcerated in the Nueces County Jail, with cells that were separated by an open courtyard. From her jail cell she could see appellant in his jail cell. Alaniz testified that she and appellant communicated by using hand gestures to form letters spelling out words, which she demonstrated to the jury. According to Alaniz, around 3 a.m., appellant asked her if she was going to testify. He needed to know in order to "get word" to Raza Unida, a gang to which appellant was connected, and that was allegedly involved in the murder of Luis Luna. She told him that she did not want to talk about it. He respond-

ed that "They would kill me and my mother."

An officer involved with suppressing gangs testified that he was summoned to the jail that morning around 3:30 a.m. and visited with Alaniz at her request, finding her very upset, crying, and fearful. She reported the threat to him. Also introduced into evidence was a videotape made by the police demonstrating the view she would have had from her cell of appellant in his during darkness.

The defense presented evidence attacking Alaniz's credibility and her ability to see appellant making the gestures, due to the conditions in the jail.

By two issues appellant challenges the legal and factual sufficiency of the evidence to support his convictions. When reviewing the legal sufficiency of the evidence we apply the test set forth in *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When reviewing the factual sufficiency of the evidence we apply the test set forth in *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim. App.1996).

The charge stated that the jury could convict appellant of retaliation against Alaniz and her mother if they found that he threatened to harm Alaniz and her mother by an unlawful act to physically harm or to kill in retaliation for and account of Alaniz's status as a prospective witness, or to prevent or delay Alaniz's service as a prospective witness. *See* Tex.Penal Code Ann. § 36.06 (Vernon 1994).

The evidence shows that Alaniz could see appellant's hand gestures and that he intended to "get word" to his gang to kill Alaniz and her mother if Alaniz testified against him. Alaniz demonstrated the method she and appellant used to communicate, spelling out words for the benefit of the jury. The videotape showed the view from her cell to his at night, the illumination available, and the visibility of the hand signals. Given this demonstrative evidence, we hold that the jury could rationally have found the essential elements of the crimes beyond a reasonable doubt. We also hold that the guilty verdicts are not so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust. We overrule the issues.

We AFFIRM the judgment.